UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - -  - - - - - - - - - - - - - - - - - - - - - -
HEATHER V. BURNETT

                    Plaintiff,

v.                                                                    3:16-cv-119
                                                                      (TJM/DEP)


HALYARD HEALTH, INC., KIMBERLY-CLARK
CORPORATION and I-FLOW CORPORATION,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## DECISION and ORDER

       Before the Court are Defendants' motions to dismiss the complaint in this

products-liability action.  See dkt. #s 7-9.  Plaintiff has responded to the motions and

the Court has determined to decide the issues without oral argument.

## I.     BACKGROUND

       This case concerns a "pain pump" implanted during a left shoulder arthroscopic

capsulorrhaphy performed on Plaintiff Heather V. Burnett on June 19, 2003.  See

Complaint ("Cmplt."), attached as Exh. 1 to Defendants' Notice of Removal, dkt. # 1-1,

at ¶ 15.  Plaintiff contends that the product was defective, causing Plaintiff to suffer

from post-arthroscopic glenohumeral chondrolysis ("PAGCL"), "a condition in which the

cartilage in the shoulder joint is slowly destroyed, causing permanent pain and

disability."  Id. at ¶ 17.  This condition caused Plaintiff to suffer "constant pain and loss

of full use of the shoulder and/or arm."  Id. at ¶ 18.  PAGCL has no effective treatment,

and most who suffer from it eventually undergo shoulder replacement.  Id.

After being served with the Complaint in the Supreme Court of Broome County, New York, Defendants removed the case to this Court and filed the instant motions to dismiss.  See dkt. # 7-9.  The parties then briefed the issues, bringing the case to its present posture.

## II.   LEGAL STANDARD

Defendants have filed motions to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  When, as here, the Plaintiff proceeds pro se, the Court will construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).

## III.   ANALYSIS

Defendants seek dismissal on various grounds.  The Court will address them in

turn.  For reasons that will become clear, the Court will first address the motions of

Halyard Health, Inc., and Kimberly-Clark Corporation that they are not liable for any

injuries allegedly caused by the product in question because of their corporate

identities.  After deciding those issues, the Court will then address Defendants'

arguments regarding the sufficiency of the pleading on the substantive claims.

### A.    Successor Liability for Kimberly-Clark Corporation and Halyard Health

Defendants Halyard Health, Inc. ("Halyard") and Kimberly-Clark Corporation

("Kimberly-Clark") contend that the Complaint does not allege that they engaged in any

wrongful conduct.  Instead, Defendants insist, liability against them is premised solely

on the claims that Halyard and Kimberly-Clark are successor corporations to Defendant

I-Flow Corporation ("I-Flow"), which manufactured the infusion pump in question.  If the

Court takes judicial notice of facts in the record regarding the relationship between I-

Flow, Kimberly-Clark, and Halyard Health, Defendants argue, the Court must find that

no liability can apply to Halyard or Kimberly-Clark.  Plaintiff contends that she has

adequately pled successor liability.

Plaintiff alleges that Halyard manufactures and distributes orthopedic medical

devices, including shoulder pain pumps.  Complt. at ¶ 2.  Plaintiff alleges that Kimberly-

Clark, through a "business segment" known as Kimberly-Clark Health Care,

manufactured and distributed orthopedic medical devices, including shoulder pain

pumps.  Id. at ¶ 3.  Plaintiff further alleges that Defendant Kimberly-Clark purchased I-

Flow in or about 2009 and at that time began to manufacturer and distribute the device

in question.  Id. at ¶ 6.  In 2014, Kimberly-Clark's business segment, Kimberly-Clark

Health care, "'spun-off' of Kimberly-Clark, becoming the independent business entity, Halyard." Id. Halyard then began to manufacturer and distribute the device in question. Id. Plaintiff does not offer any other allegations as to the business relationships between the parties.

The question here is whether Plaintiff has adequately pled successor liability with reference to Defendants Halyard and Kimberly-Clark. In New York, "[i]t is the general rule that '[a] corporation which acquires the assets of another is not generally liable for the torts of its predecessor[.]'" State Farm Fire & Cas. Co. v. Main Bros. Oil Co., 101 A.D.3d 1575, 1577, 956 N.Y.S.2d 695, 698 (3d Dept. 2012) (quoting Wensing v. Paris Indus.-N.Y., 158 A.D.2d 164, 166, 558 N.Y.S.2d 692 (1990)). "[S]everal exceptions" apply to that rule, however, "namely that '[a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation or (4) the transaction is entered into fraudulently to escape such obligations.'" Id. (quoting Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245, 451 N.E.2d 195, 464 N.Y.S.2d 437 (1983)).

The Court finds that the Defendants' motion must be granted with respect to both Halyard and Kimberly-Clark. As explained above, Plaintiff has alleged only that Kimberly-Clark and Halyard are successor corporations to I-Flow. Mere status as a successor does not impose liability under New York law. Plaintiff has offered no other allegations sufficient to make plausible that one of the exceptions described above apply and without such allegations, the Court cannot find that Plaintiff has stated a claim upon which relief could be granted. The Court will grant the motion with leave to

4

re-plead, however.  "[T]his circuit strongly favors liberal grant of an opportunity to

replead after dismissal of a complaint under Rule 12(b)(6)."  Porat v. Lincoln Towers

Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006).  Nothing in the Plaintiff's pleading

indicates that successor liability could not apply and Plaintiff should be permitted to add

additional good-faith allegations that would make such a claim plausible.[1]

---

[1]Defendants point to a filing made with the SEC that Defendants apparently
contend forecloses any possibility that Plaintiff could prevail on her claims against
Kimberly-Clark and Halyard.  See dkt. # 7-4.  Defendants contend that the Court can
take judicial notice of this filing, which allegedly establishes the relationship between I-
Flow and Halyard Health.  "In considering a [Rule 12(b)(6)] motion to dismiss . . . a
district court must limit itself to facts stated in the complaint or in documents attached to
the complaint as exhibits or incorporated in the complaint by reference."  Kramer v.
Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).  The Court "may also consider
matters of which judicial notice may be taken under Fed. R. Evid. 201."

Under Rule 201, the Court may take judicial notice of "a fact that is not subject to
reasonable dispute because it: (1) is generally known within the trial court's territorial
jurisdiction; or (2) can be accurately and readily determined from sources whose
accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  The Court "must"
take judicial notice of such facts "if a party requests it and the court is supplied with the
necessary information."  FED. R. EVID. 201(c)(2).  This requirement to take judicial
notice, however, is limited by "subsection (b), which requires that the fact to be noticed
'not [be] subject to reasonable dispute.'"  Gulf Ins. Co. v. Glasbrenner, 343 B.R. 47, 63
(S.D.N.Y. 2006).  "The more critical an issue is to the ultimate disposition of the case,
the less appropriate judicial notice becomes."  Pina v. Henderson, 752 F.2d 47, 50 (2d
Cir. 1985).  "A court should not go outside the record to supply a fact that is an
essential part of a party's case unless the fact is clearly beyond dispute.  Id.  "Because
the effect of judicial notice is to deprive a party of the opportunity to use rebuttal
evidence, cross-examination, and argument to attack contrary evidence, caution must
be used in determining that a fact is beyond controversy under Rule 201(b)."  Int'l Star
Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir.
1998).

The Defendant asks the Court to take judicial notice of facts stated in the filing in
question but makes no effort to explain the nature of that filing or its purpose.  The
docket in question clearly establishes that a stock transfer took place between I-Flow
and a Kimberly-Clark subsidiary in 2009.  Courts frequently take judicial notice of public
documents, such as court filings.  Kramer, 937 F.2d at 774.  They take such notice "not
for the truth of the matters asserted . . . but rather to establish the fact of such litigation
and related filings."  Id.  Indeed, "a district court may take judicial notice of the contents
of relevant public disclosure documents required to be filed with the SEC as facts

## B.    Substantive Claims

All the Defendants also contend that Plaintiff has failed to state a claim on any of her substantive allegations.  The Court will address each in turn.

### i.    Gross Negligence

Defendants first contend that Plaintiff has offered only conclusory allegations of gross negligence, and that the claim must therefore be dismissed.  In New York, "[g]ross negligence differs in kind, not only degree, from claims of ordinary negligence.'" Goldstein v. Carnell Assoc., Inc., 74 A.D.3d 745, 746, 906 N.Y.S.2d 905 (2d Dept. 2010) (quoting Colnaghi, U.S. v. Jewlers Protection Servs., 81 NY2d 821, 823, 611 N.E.2d 282 (1993)).  Such conduct "must 'smack[ ] of intentional wrongdoing' or 'evince[] a reckless indifference to the rights of others.'" Id. (quoting Sommer v. Federal

---

'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Id. (quoting Fed. R. Evid. 201(b)(2).  In the context of fraud claims, judicial notice may also be taken of "related documents that bear on the adequacy of the disclosure as well as documents actually alleged to contain inadequate or misleading statements."  Id.  At the same time, notice should be taken only of "public disclosure documents required by law to be filed, and actually filed, with the SEC, and not to other forms of disclosure such as press releases or announcements at shareholder meetings."  Id.

Even assuming the Court could take notice of the SEC filing in question, the Court would not take that notice for the purpose asserted by the Defendants: to establish that no successor liability could exist for Kimberly-Clark or Halyard. Establishing liability was not the purpose of the SEC filing, and nothing in the filing states the terms of any past or ongoing business relationship between I-Flow and the successor companies.  If Plaintiff can properly plead such a claim, the existence of successor liability is a question for discovery.  The law makes clear that Plaintiff should have an opportunity to rebut any claims regarding successor liability Defendants make.

For her part, Plaintiff contends that the Defendants' motion, which attempts to use documents outside the pleadings to argue for dismissal, should be converted to a summary judgment motion and discovery should be permitted.  The Court declines to do so, since the document in question is immaterial to the Court's decision granting the motion to dismiss.

Signal Corp., 79 N.Y.2d 540, 553, 593 N.E.2d 957 (1992)).  "'Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others.'" Gentile v. Garden City Alarm Co., 147 A.D.2d 124, 131, 541 N.Y.S.2d 505, 510 (2d Dept. 1989) (quoting New York Pattern Jury Instructions 2:10A (1988 Supp.)).

Plaintiff contends that she has plausibly pled that Defendant acted with reckless indifference to the rights of others and points to two allegations in the Complaint. Plaintiff points to the allegation that "Defendants negligently failed to recognize the correlation between the continuous injections of anesthetic medications into the shoulder joint" and joint disease "despite the wealth of scientific information available that a reasonable medical device manufacturer would have discovered."  Complt. at ¶ 20.  Plaintiff also identifies the allegation that "Defendants' intra-articular pain pump was defective due to inadequate post-marketing surveillance and/or warnings especially in light of the serious injuries resulting from the use thereof as stated herein."  Id. at ¶ 24.

In considering a motion to dismiss, the Court "must consider the complaint in its entirety."  Slayton v. Am. Express Co., 604 F.3d 758, 766 (2d Cir. 2010).  Reading the Complaint in its entirety, the Court will deny the Defendants' motion in this respect. Making all inferences in the Plaintiff's favor, the Court reads the Complaint to allege that Defendants marketed and sold a product that they knew was dangerous and defective, and likely to cause serious, permanent and debilitating injuries for those who used the pain pump.  If Plaintiff can prove such claims, Plaintiff can prove that Defendant's conduct evinced such a small degree of care for users as to demonstrate a complete disregard for the safety of the public.

7

Defendants' arguments to the contrary fail, largely because they attempt to fast-forward through discovery to summary judgment.  Citing to cases from other circuits, the Defendants argue that courts "have already concluded, as a matter of law in other infusion pump cases involving the very same risk at issue in this case, that the alleged risk of chondrolysis was unknown to the medical community in 2003, given the relevant scientific literature."  Defendants' reply brief, dkt. # 20, at 1-2.  Defendants cite to cases at a different procedural posture than this action.  In Rodriguez v. Stryker Corp., 680 F.3d 568 (6th Cir. 2012), the court applied Tennessee law and upheld the district court's decision to grant the defendant's motion for summary judgment.  Id.  That decision came in part because the plaintiff's citations to medical studies about the dangers of pain pumps were unavailing–they did not speak to the defendant's knowledge of those dangers at the time doctors installed the pump.  Id. at 571.   Similarly, a Colorado district court granted summary judgment to a defendant, finding that the articles cited by the plaintiff "to demonstrate that, prior to her surgery in 2003, medical literature documented the risk of injecting foreign substances into joints" did not establish liability for the maker of a pain pump.  Pavelko v. Breg, Inc., No. 09cv1461, 2011 U.S. Dist. LEXIS 19380 at *6 (D. Col. Feb. 28, 2011).  The Eighth Circuit also approved granting summary judgment to a defendant who relied on medical literature to argue that injuries from a pain pump were foreseeable because, after surveying that literature, the court found that the defendant "could not have foreseen the potential for articular cartilage damage as the result of the surgical implementation of its pain pump based on the medical community's knowledge in 2002."  Mack v. Stryker Corp., 748 F.3d 845, 855 (8th Cir. 2014).  Thus, "as a matter of law" the defendant "had no duty to protect or warn

[plaintiff] of the harm that [defendant's] pain pumps may inflict." Id.

This argument provides no basis for granting Defendants' motion. The courts that decided the defendants' motions in the cited cases all rendered their decisions after the parties had conducted discovery and the defendants filed summary judgment motions. In considering those motions, the courts had no obligation to accept the facts alleged by the plaintiffs as true. The Court must do so here, as Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6). Moreover, the cases do not establish, "as a matter of law," that manufacturers in 2003 had no way of knowing about the dangers of pain pumps. Courts do not use cases from other jurisdictions to establish the facts in the cases before them. Here, Defendants, in effect, ask the Court to take judicial notice of the factual conclusions of other courts. Such notice is inappropriate. As the Second Circuit found in Kramer v. Time Warner, "courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." 937 F.2d at 774.[2]

_____

[2]Defendants also complain that Plaintiff has alleged, "upon information and belief," that I-Flow disregarded "the wealth of scientific information" regarding the risk from exposure to painkillers delivered by an infusion pump. Defendants contend that "an allegation based upon 'information and belief' hardly satisfies the plausibility requirement of Iqbal/Twombly." Defendants' categorical statement is incorrect. Courts have found that "the notion that Twombly imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the Twombly opinion itself." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010). The Supreme Court in Twombly underscored that Rule 8(a)(2) mandates "'only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. (quoting Twombly, 550 U.S. at 555. The plausibility standard permits a plaintiff to plead "facts alleged 'upon information and belief' where the facts

9

### ii.    Warranty Claims

Defendants next argue that Plaintiff's warranty claims are time-barred.  They

point out that Plaintiff alleges that doctors installed the infusion pump during a June

2003 surgery, but that she failed to file her complaint until December 2015, well after

the statute of limitations for her breach of express and implied warranty claims had run.

Plaintiff offers no response.

Breach of warranty claims are governed by a four-year statute of limitations in

New York.  Crossman v. Harding Indus. Tool, 222 A.D.2d 1081, 1082, 635 N.Y.S.2d

397, 399 (4th Dept. 1995).  That limitation applies whether the claim is for breach of

---

are peculiarly within the possession and control of the defendant[.]" Id. at 120 (quoting
Boykin v. KeyCorp. 521 F.3d 202, 215 (2d Cir. 2008)).  Such pleading can also occur
when "the belief is based on factual information that makes the inference of culpability
plausible[.]" Id.  Courts in the Second Circuit reject the notion "that Twombly and Iqbal
require the pleading of specific evidence or extra facts beyond what is needed to make
the claim plausible." Id. at 120-121.  The Rule 8(a) standard does not mandate "'a
universal standard of heightened fact pleading, but . . . instead [requires] a flexible
'plausibility standard,' which obliges a pleader to amplify a claim with some factual
allegations in those contexts where such amplification is needed to render the claim
plausible.'" Id. quoting Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir. 2007 (emphasis in
original)).
    To the extent, then, that Plaintiff points to facts peculiarly within the Defendants'
knowledge, an allegation "on information and belief" is not fatal to the Complaint.
Making all reasonable inferences in Plaintiff's flavor and reading the Complaint in
context, the Court reads the allegations in question to be of two parts: 1) that a wealth
of scientific information and studies exists to establish the danger of delivering the
painkiller through an infusion pump; and 2) that Defendants were aware of this
information and nevertheless sold a device as safe that delivered drugs by this method.
Information about the particular knowledge that Defendants had of studies of the
dangers of such devices is certainly information exclusively within the Defendants'
control at this point, and alleging such knowledge "on information and belief" meets the
pleading standard.  Defendants further argue that "[i]f Plaintiff truly believes that such
literature existed by the time of Plaintiff's June, 2003, surgery, then Plaintiff should
amend her complaint and identify this literature."  Defendants' Reply Brief, dkt. # 20, at
1.  Including such literature is not necessary to meet the pleading requirements.

express or implied warranty.  Heller v. U.S. Suzuki Motor Corp., 64 N.Y.2d 407, 412, 477 N.E.2d 434, 437 (1985).  The statue of limitations on a warranty claim, "whether express or implied, begins to run at the time the product is placed in the stream of commerce or at the time of sale by the manufacturer."  Schrader v. Sunnyside Corp., 297 A.D.2d 369, 371, 747 N.Y.S.2d 26, 28 (2d Dept. 2002).

Plaintiff's complaint alleges that she underwent the surgery that installed the offending pain pump on June 19, 2003.  Complt. at ¶ 15.  Even accepting that date as the date the pump was introduced into commerce, the four-year statute of limitations has long since run.  Plaintiff has offered no alternative date for when the statute of limitations began to run, and the Court therefore concludes that the statute of limitations has run on Plaintiff's warranty claims.  The motion will be granted in this respect.

### iii.    Fraud Claims

Defendants further argue that Plaintiff's fraud-based claims must be dismissed because Plaintiff has failed to plead them with the particularity required by Federal Rule of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstnaces constituting fraud or mistake." FED. R. CIV. P. 9(b).  At the same time, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Id.  To satisfy this rule, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  "A claim for common law fraud is subject to the particularity

11

pleading requirements of Federal Rule of Civil Procedure 9(b)[.]"  Fin. Guar. Ins. Co. v.

Putnam Advisory Co., LLC, 783 F.3d 395, 402-3 (2d Cir. 2015).

### a.    Seventh Cause of Action

Plaintiff's seventh cause of action alleges "misrepresentation and fraudulent

concealment."  See Complt.  Making all inferences in the Plaintiff's favor, the Court

reads the Court to raise two claims: one for negligent misrepresentation and one for

fraudulent concealment.  The Court will address the claims of fraudulent conduct first.

Plaintiff alleges that "Defendants falsely and fraudulently represented to the medical

and healthcare community, and to the Plaintiff and/or the FDA, and/or the public in

general, that said product had been tested and was found to be safe and/or effective for

the control of pain after shoulder surgery."  Id. at ¶ 59.  Plaintiff further alleges that such

"representations were, in fact, false."  Id. at ¶ 60.  Plaintiff also avers that 'when some

or all of said representations were made by Defendants, they knew those

representations to be false and they willfully, wantonly and recklessly disregarded

whether the representations were true[.]"  Id. at ¶ 62.  Such representations, Plaintiff

insists, "were made by the Defendants with the intent of defrauding and deceiving the

Plaintiff, the public in general, and the medical and healthcare community in

particular[.]"  Id. In addition, those statements "were made with the intent of inducing the

public, in general, and the medical and healthcare community in particular, to

recommend, dispense and/or purchase said product for use as a delivering device for

analgesics[.]"  Id.

Plaintiff further contends that Defendants "negligently and/or fraudulently

concealed and intentionally omitted material information[.]"  Id. at ¶ 63.  That

12

information included: "(a) [t]hat pain pumps are not as safe as other methods or devices for delivering analgesics; (b) [t]hat the risks of adverse events with pain pumps and bupivacaine products were higher than those with other available analgesics; (c) [t]hat the risks of adverse events with pain pumps and bupivacaine products were not adequately tested and/or known by Defendants; and (d) [t]hat Defendants were aware of the dangers of exposing cartilage to bupivacaine products, in addition to and above and beyond those associated with other available analgesics." Id. at ¶ 63(a-d).  Plaintiff also alleges that Defendants had a duty to disclose this information to Plaintiff and her healthcare providers, as well as to the Food and Drug Administration ("FDA"), and that Plaintiff and her health care providers relied on these fraudulent assurances about the safety of the pain pump, continuing to use the device after Plaintiff's surgery.  Id. at ¶¶ 64-65.  Those representations also caused Plaintiff's healthcare providers to "purchase, recommend and/or dispense and use the" device.  Id. at ¶ 66.

Plaintiff first alleges fraudulent concealment, which requires proof that "defendant made a material misrepresentation of fact; that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; that the plaintiff reasonably relied on the misrepresentation; . . . that the plaintiff suffered damage as a result of its reliance on the defendant's misrepresentation; . . . [and] that the defendant had a duty to disclose material information and that it failed to do so[.]"  P.T. Bank Cent. Asia v. ABN AMRO Bank, N.V., 301 A.D.2d 373, 377, 754 N.Y.S.2d 245, 251 (1st Dept. 2003).  Defendants do not contend that Plaintiff failed to plead these elements, but instead contend that she has not pled them with the specificity required by Rule 9(b).

The Court agrees with the Defendants that Plaintiff has failed to meet the Rule

9(b) requirements with respect to this claim.  Plaintiff offers general allegations that Defendants made statements they knew were false about the safety of the device in question, but Plaintiff does not state with any specificity when or where those statements were made, or provide sufficient detail about their contents.  As explained, to satisfy the rule "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Mills, 12 F.3d at 1175.  The generalized statements related above fall short of this standard, and the motion must be granted in this respect.  The claim will be granted without prejudice, however, as Plaintiff could conceivably amend the Complaint to add the facts that Defendants claim are lacking.

Plaintiff also appears to plead a claim for negligent misrepresentation.[3]  "To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his detriment.'" Anschutz Corp. v. Merril Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012) (quoting Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000)). A plaintiff must demonstrate "'actual privity of contract between the parties or a

---

[3]Better pleading practice would be to state the claims separately.

14

relationship so close as to approach that of privity.'" Id. (quoting In re Time Warner Inc.

Sec. Litig., 9 F.3d 259, 271 (2d Cir. 1989) (internal citations omitted)).

Defendants insist that the Court must apply the heightened pleading standard of

Rule 9(b) to Plaintiff's negligent misrepresentation claims and that Plaintiff has failed to

meet this standard.  Plaintiff's brief does not address the issue directly.[4]  Plaintiff cites

to two district court cases for this proposition, one from the Eastern District of New and

the other from the Eastern District of North Carolina.  In Woods v. Maytag, 807

F.Supp.2d 112 (E.D.N.Y. 2011), Plaintiff sued the manufacturer of a gas oven that

exploded and burned him.  Id. at 117.  Plaintiff alleged that Defendants were aware of

the potential of explosion or fire with the oven due to various reports, a recall by the

defendant, and patents designed issued that were designed to prevent the problems

causing the explosion.  Id.  The court dismissed plaintiff's claim for "fraudulent

misrepresentation" because plaintiff had failed to allege "any facts supporting the

existence of an agency relationship between" the manufacturer and seller of the oven.

Id. at 121.  The court applied the 9(b) requirements, but to a claim of fraud, not to a

claim of negligent misrepresentation.  Id.  That case does nothing to address the issue.

In Rholik v. I-Flow Corp., No. 7:10cv173, 2011 U.S. Dist. LEXIS 73454 at *10 (E.D.N.C.

July 7, 2011), it appears that the court applied the Rule 9(b) requirements in dismissing

---

[4]In reply, Defendants contend that the fact that the parties were engaged in a commercial transaction insulates them from liability for negligent misrepresentation.  As the Court's decision permits re-pleading of this claim to allow Plaintiff to meet the Rule 9(b) requirements, the Court will defer a decision on that issue.  This is especially true because Defendants raised the issue only in reply.  The Court notes, however, that the existence of a "duty to speak with care" depends on the circumstances alleged in the Complaint, which could create "some identifiable source of a special duty of care." Kimmell v. Schaefer, 89 N.Y.2d 257, 263-264, 675 N.E..2d 450, 454 (1996).

a negligent misrepresentation claim, but the court offered no explanation for why fraud and negligent misrepresentation require the same amount of specificity and the parties did not appear to dispute the standard's application.  Id.

Neither the Second Circuit Court of Appeals or the United States Supreme Court have answered the question of whether negligent misrepresentation requires the pleader to follow the heightened standard of Rule 9(b).  Indeed, in CAC Group Inc. v. Maxim Group LLC, 523 Fed. Appx. 802 (2d Cir. May 2, 2013), the Second Circuit Court of Appeals noted that the parties disagreed about which standard applied to negligent misrepresentation claims but declined to address the question because plaintiff's pleading failed even under the more lenient standard.  Id. at 806.  At the same time, several district courts in this Circuit have applied the heightened pleading standards to negligent misrepresentation claims, finding that such claims "sound in fraud" and therefore require more detailed pleading.  See, e.g., BNP Paribas Morg. Corp. v. Bank of Am., N.A., 949 F.Supp.2d 486, 508 (S.D.N.Y. 2013); Simon v. Castello, 172 F.R.D. 103, 105 (S.D.N.Y. 1997) ("The particularity requirements of Rule 9(b) have also been found to apply to claims for negligent misrepresentation."); In re Leslie Fay Cos., 918 F.Supp. 748, 766 (S.D.N.Y. 1996) (same);  Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 U.S,. Dist. LEXIS 5913 at * 11 (S.D.N.Y. April 10, 2003) ("Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard.").  The Court will adopt the rules stated by those courts, finding that Plaintiff's claims assert a species of fraud and require more detailed pleading.  As explained above, the Court also finds that the Plaintiff's allegations in this respect fail to meet the pleading standard.  The motion will be granted as to these claims too.  For the

16

reasons stated above, however, the motion will be granted without prejudice to Plaintiff filing an amended complaint that complies with Rule 9(b).

### b.      Eighth Cause of Action

Plaintiff's eighth cause of action alleges fraud and deceit.  Plaintiff alleges that "Defendants conducted research and used the pain pump as part of their research and testing[.]"  Complt. at ¶ 69.  Defendants then "intentionally distributed false information that the [pain pumps] were safe for their intended use in the shoulder joints, and intentionally omitted certain results of the research and testing when reporting the same" to Plaintiff, the general public, and healthcare professionals.  Id.  Defendants disseminated that information in various fora, including "reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, internet sites, and all other commercial media[.]"  Id. at ¶ 71.  All of these sources "contained material misrepresentations of fact and/or omissions as to claims that the pain pump was safe for its intended use in shoulder joints."  Id.  The information Defendants provided "intentionally misrepresented that the pain pump carried the same risks, hazards, and/or dangers as other available analgesics or devices, and was fit and safe for use in shoulder joints[.]"  Id. at ¶ 72.  Defendants uttered such misrepresentations "to falsely ensure the quality and fitness for use of the pain pump as complained of herein, and to induce the purchase, request for dispensing and recommending of, implanting and continued use of the products."  Id.  Plaintiff and her healthcare providers relied on such misrepresentations and were not aware of any dangers of the product.  Id. at ¶ 73.  Had they known of such dangers, they would not have purchased and use the device; instead, they relied on Defendants'

17

misrepresentations.  Id.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  Fin. Guar. Ins. Co., 783 F.3d at 402.  Again, Defendants do not contend that Plaintiff failed to plead the elements of such fraud.  Instead, they argue that Plaintiff's allegations are insufficient given the specificity required by Rule 9(b).  The Court agrees.  Plaintiff has offered only generalized descriptions of the statements made, and has not identified when or where they were made in sufficient detail.  The motion to dismiss will be granted with respect to these claims as well.  The motion will likewise be granted without prejudice

### c.    Fraud on the FDA

Defendants next assert that Plaintiff's claims for fraud on the FDA must be stricken as they are preempted by federal law.  Plaintiff's only response is that "[d]ismissal on that claim is premature at this time, as Plaintiff should be permitted to conduct discovery on this issue."  Plaintiff's brief at 13.

Plaintiff's allegations of fraud in Count Seven include claims that Defendants "fraudulently and falsely represented to . . . the FDA . . . that the product had been tested and was found to be safe and/or effective for the control of pain after shoulder surgery."  Complt. at ¶ 59.  Plaintiff also alleges that Defendants had "a duty to disclose to . . . the FDA the defective nature of the pain pump after shoulder surgery[.]"  Id. at ¶ 64.  In Count Eight, Plaintiff alleges that Defendants "intentionally distributed false information" concerning the safety of the pain pumps and "intentionally omitted certain

18

results of the research and testing when reporting" that information to "the FDA." Id. at

¶ 69.

Plaintiff's Complaint clearly alleges fraud on the FDA during the regulatory

process for market approval of the device in question.  The Supreme Court is clear that

"state-law fraud-on-the-FDA claims [conflict] with, and [are] therefore impliedly pre-

empted by, federal law." Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 348

(2001).  Any fraud-on-the FDA claim must be dismissed.  At the same time, Buckman

does not stand for the broad proposition . . . that all claims under state law for failure to

comply with FDA reporting requirements are barred.  Rosen v. St. Jude Med., Inc., 41

F.Supp.3d 170, (N.D.N.Y. 2014).  To the extent that discovery may reveal some other

state-law claim based on a failure to comply with an FDA reporting requirement, Plaintiff

may move to amend the Complaint at an appropriate time.

### iv.    Punitive Damages

Finally, Defendants seek to "strike" Plaintiff's claims for punitive damages,

contending that she has failed to plead facts sufficient to support such a claim.  Plaintiff,

Defendants insist, has failed to plead the sort of outrageous conduct that would permit

punitive damages, whether in relation to Defendants' dealings with the public or with the

FDA during the approval process.

In New York, '[p]unitive damages . . . are awarded to punish a defendant for

wanton and reckless or malicious acts and to protect society against similar acts.'" In re

Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 725 F.3d 65, 127 (2d Cir. 2013)

(quoting Rivera v. City of New York, 40 A.D.3d 334, 836 N.Y.S.2d 108, 117 (1st Dept.

2007)).  New York courts have varied in their description of conduct justifying punitive

19

damages "'but, essentially, it is conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" Id. (quoting Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203, 550 N.E.2d 930, 551 N.Y.S.2d 481 (1990)). Defendant's "conduct need not be intentionally harmful but may consist of actions which constitute wilful or wanton negligence or recklessness." Id. (internal citations omitted). A jury may award punitive damages when "the defendant 'acted with actual malice involving intentional wrongdoing' or where such conduct amounted to a 'wanton, willful or reckless disregard of plaintiffs' rights.'" Id. (quoting Ligo v. Gerould, 244 A.D.2d 852, 665 N.Y.S.2d 223, 224 (4th Dept. 1997)). Punitive damages must serve as a "'social exemplary remedy'" and are therefore address conduct "'sufficiently blameworthy' that punishing it 'advance[s] a strong public policy of the state.'" Id. at 128 (quoting Randi A. v. Long Island Surgi-Ctr., 46 A.D.3d 74, 842 N.Y.S.2d 558, 564 (2d Dept. 2007)).

The Court will deny the motion in this respect. Plaintiff has alleged that Defendant knowingly misled the public about the safety of a medical device and that such conduct led to serious injury. Assuming that Plaintiff could prove such allegations, a jury could find the sort of egregious and reprehensible conduct that justifies punitive damages in New York. This is particularly so in the context of this case, which involves the public sale and promotion of an allegedly defective medical device that purportedly caused serious and debilitating injury as a result of known defects. Punitive damages would serve to protect the public from such harms.[5]

---

[5]Given the Court's disposition of Defendants' motion to dismiss claims for fraud on the FDA, the Court declines to address whether Plaintiff's allegations concerning the

**IV.    CONCLUSION**

For the reasons stated above, the Defendants' motions to dismiss, dkt. #s 7-9, are hereby GRANTED in part and DENIED in part, as follows:

1.  Defendant Halyard Health's motion, dkt. # 7, is GRANTED with leave to re-plead with respect to Plaintiff's claims of successor liability against Halyard;

2.  Defendant Kimberly-Clark Corporation's motion, dkt. # 8, is GRANTED with leave to re-plead respect to Plaintiff's claims of successor liability against Kimberly-Clark;

3.  As to all Defendants' motions with respect to Plaintiff's substantive claims, dkt. #s 7-9, the motions are GRANTED in part and DENIED in part, as follows:

    a.  Defendants' motions to dismiss Plaintiff's breach of implied and express warranty and fraud claims are GRANTED, with prejudice;

    b.  Defendants' motions to dismiss Plaintiff's fraud claims are GRANTED, with leave to re-plead all claims except those related to FDA approval; and

    c.  Defendants' motions are denied in all other respects.

Plaintiff may file an Amended Complaint within 21 days of the date of this Order.

IT IS SO ORDERED.

Dated: May 12, 2016

Thomas J. McAvoy
Senior, U.S. District Judge

---

FDA could in themselves justify punitive damages.  At this point, the Court finds Plaintiff's general allegations of knowing misconduct sufficient to justify punitive damages if proved.

21