UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
HEATHER V. BURNETT

Plaintiff,

v. 3:16-cv-119 (TJM/DEP)

HALYARD HEALTH, INC., KIMBERLY-CLARK CORPORATION and I-FLOW CORPORATION,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

**DECISION and ORDER**

Before the Court are Defendants' motions to dismiss the Amended Complaint in this products-liability action. See dkt. #s 33-35. Plaintiff has responded to the motions and the Court has determined to decide the issues without oral argument.

## I. BACKGROUND

This case concerns a "pain pump" implanted during a left shoulder arthroscopic capsulorrhaphy performed on Plaintiff Heather V. Burnett on June 19, 2003. See Amended Complaint ("Amend. Cmplt."), dkt. # 26, at ¶ 15. Plaintiff contends that the product was defective, causing Plaintiff to suffer from post-arthroscopic glenohumeral chondrolysis ("PAGCL"), "a condition in which the cartilage in the shoulder joint is slowly destroyed, causing permanent pain and disability." Id. at ¶ 17. This progressive condition has "no effective treatment" and most patients eventually undergo a shoulder replacement. Id. at ¶ 19. Plaintiff alleges that Defendants' negligence injured her, and seeks damages. Id. at ¶¶ 20-31. Plaintiff's Amendment Complaint raises a number of

causes of action in negligence, products liability, and fraud. Plaintiff also seeks to assign successor liability to Defendants Halyard Health, Inc. and Kimberly-Clark Corporation.

After being served with the Plaintiff's initial Complaint in the Supreme Court of Broome County, New York, Defendants removed the case to this Court. They filed motions to dismiss. See dkt. # 7-9. The Court granted those motions in part and denied them in part, permitting Plaintiff to file an amended complaint. See dkt. # 24. After the Plaintiff filed an Amended Complaint, Defendants filed the instant motions. See dkt. #s 33-35. The parties briefed the issues, bringing the case to its present posture.

## II. LEGAL STANDARD

Defendants have filed motions to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds *pro se*, the Court will construe [the complaint] broadly, and interpret

[it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).

## III. ANALYSIS

Defendants seek dismissal on various grounds. The Court will address them in turn, as necessary.

### A. Successor Liability for Kimberly-Clark Corporation and Halyard Health

Defendants Halyard Health, Inc. ("Halyard") and Kimberly-Clark Corporation ("Kimberly-Clark") first contend that Plaintiff's Amended Complaint fails to offer sufficient allegations of successor liability.

Plaintiff raises separate causes of action for "successor liability" against Kimberly-Clark and Halyard Health. Plaintiff alleges that Kimberly-Clark "purchased Defendant I-Flow in or about 2009[.]" Amend. Complt. at ¶ 92. At that time, Kimberly-Clark, "through its business segment Kimberly-Clark Health Care, began manufacturing and distributing the Painbuster, or a direct successor in the State of New York." Id. Plaintiff contends that by "purchasing I-Flow and then manufacturing and distributing the Painbuster, the same pain pump manufactured and distributed by Defendant, I-Flow," Kimberly-Clark "implicit[ly] [assumed] . . . successor liability." Id. at ¶ 94. Plaintiff further alleges "[u]pon information and belief, the transaction that occurred between Defendant Kimberly-Clark and Defendant I-Flow was a merger." Id. at ¶ 95. As to Halyard Health, Plaintiff alleges that "in 2014, Defendant Kimberly-Clark's business segment, Kimberly-Clark Health Care, 'spun off' of Kimberly-Clark, becoming the

independent business entity, Halyard." Id. at ¶ 98. Halyard "continued manufacture and distribution of the Painbuster, the same pain pump manufactured and distributed by Defendant, I-Flow, and Defendant Kimberly-Clark[.]" Id. at ¶ 99.

The question here is whether Plaintiff has adequately pled successor liability with reference to Defendants Halyard and Kimberly-Clark. In New York, "[i]t is the general rule that '[a] corporation which acquires the assets of another is not generally liable for the torts of its predecessor[.]'" State Farm Fire & Cas. Co. v. Main Bros. Oil Co., 101 A.D.3d 1575, 1577, 956 N.Y.S.2d 695, 698 (3d Dept. 2012) (quoting Wensing v. Paris Indus.-N.Y., 158 A.D.2d 164, 166, 558 N.Y.S.2d 692 (1990)). "[S]everal exceptions" apply to that rule, however, "namely that '[a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation or (4) the transaction is entered into fraudulently to escape such obligations.'" Id. (quoting Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245, 451 N.E.2d 195, 464 N.Y.S.2d 437 (1983)). "The second and third items are based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased." Grant-Howard Associates v. General Housewares Corp., 63 N.Y.2d 291, 296-97, 472 N.E. 2d 1, 3 (1984). In any case, "[a] sale of assets does not vitiate the original company's liability." Id. If successor liability applies, an injured plaintiff "can elect to proceed against the defunct corporation, the successor corporation, or both." Id.

Plaintiff argues that Halyard Health, which was "spun off" from Kimberly-Clark and which continued to manufacture the Painbuster pump, "served as a 'mere continuation of Defendant Kimberly-Clark." Liability for a successor corporation can occur through the "continuation doctrine," but a plaintiff cannot maintain a "continuation" cause of action unless the creation of the new entity "extinguishes" the old one. Ring v. Elizabeth Found. for the Arts, 136 A.D.3d 525, 526, 25 N.Y.S.3d 173, 175 (1st Dept. 2016). Successor liability does not apply when the predecessor "continue[s] to exist as a separate entity and remain[s] active[.]" Ivory Dev., LLC v. Roe, 135 A.D.3d 1216, 693 (3d Dept. 2016); State Farm Fire & Cas. Co. v. Main Bros. Oil Co., 101 A.D.3d 1575, 1577, 956 N.Y.S. 2d 695, 698 (3d Dept. 2012) ("'mere continuation' . . . requires that the selling/predecessor corporation be fully extinguished for there to be successor liability[.]"). Plaintiff does not deny that Kimberly-Clark continues to exist as an entity separate from Halyard Health and remains active. Plaintiff's claim of successor liability against Halyard Health is based on the continuation doctrine, and the claim must therefore be dismissed with prejudice.

As to successor liability for Defendant Kimberly-Clark, Plaintiff argues that the allegations are sufficient because the Amended Complaint alleges that "Kimberly-Clark, 'began manufacturing and distributing the Painbuster, or a direct successor in the State of New York,'" which the Amended Complaint concludes is "an 'implicit assumption of successor liability.'" Plaintiff offers no case law to support the proposition that successor liability is implied if one company manufactures a product previously manufactured by another. Indeed, Plaintiff's argument here flies in the face of the principle of successor liability, which provides an exception to the general rule in New

York that "'[a] corporation which acquires the assets of another is not generally liable for the torts of its predecessor[.]'" State Farm, 101 A.D.3d at 1577. Plaintiff's allegations are conclusory, but even those conclusory claims only allege that by manufacturing the pain pump, Kimberly-Clark implicitly assumed liability for claims against I-Flow. Under the successor liability doctrine, however, a sucessor must either "expressly or impliedly [assume] the predecessor's *tort liability*." Id. (emphasis added). The Amended Complaint's conclusory allegations do not allege an assumption, implied or express, of I-Flow's tort liability, and Halyard Health's motion will be granted.

Plaintiff also alleges that the Amended Complaint sufficiently pleads merger as a basis of successor liability. "Under the concept of de facto merger, 'a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased.'" Id. at 1578 (quoting Winch v. Yates Am. Mach. Co., 205 A.D.2d 1001, 1002, 613 N.Y.S. 2d 980 (1994)). "Factors to be considered in determining whether a de facto merger has occurred include whether there was any continuity of ownership, management, personnel, physical location, assets or general business operations[.]" Rosplock v. Upstate Mgt. Assoc., Inc., 108 A.D.3d 825, 827, 968 N.Y.S.2d 706, 709 (3d Dept. 2013). Continuity of ownership is required for the de factor merger doctrine to apply. Matter of TBA Global, LLC v. Fidus Partners, LLC, 132 A.D.3d 195, 209, 15 N.Y.S. 3d 769, 780 (1st Dep. 2015). Still, "the question whether a de facto merger exists is 'analyzed in a flexible manner that disregards mere questions of form and asks whether,' in substance, 'it was the intent of [the successor] to absorb and continue the operation of [the predecessor][.]'" Tap Holdings, LLC v. Orix Fin. Corp., 109 A.D.3d

167, 176, 970 N.Y.S.2d 178, 184 (1st Dept. 2013) (quoting Fitzgerald v. Fahnestock & Co., 286 A.D.2d 573, 574-575, 730 N.Y.2d 70 (1st Dept. 2001)).

The Court finds that Plaintiff's allegations of merger are wholly conclusory; Plaintiff simply alleges merger, without alleging any facts to support that claim, such as continuity of ownership, management, personnel, or location of operations. The allegations as stated are insufficient to push the Amended Complaint over the line from possible to plausible. Plaintiff also points to a merger agreement attached to Defendant's motion to dismiss the original Complaint, which Plaintiff contends establishes a merger. Beyond the fact that Plaintiff's Amended Complaint fails to allege any facts gleaned from this document, the Court notes that the merger agreement was actually between I-Flow and Boxer Acquisition, Inc., another subsidiary of Kimberly-Clark, and not between Kimberly-Clark and I-flow. See Exh. B. to Kimberly-Clark's Motion to Dismiss, dkt. # 8-4. That document notes that the underlying merger agreement provides that "[Boxer] will be merged with and into [I-Flow] with [I-Flow] continuing as the surviving corporation, wholly owned by [Kimberly-Clark]." Id. at 2. This agreement is evidence of a merger of I-Flow and Boxer, not I-Flow and Kimberly-Clark. Even if the contents of the agreement had been alleged in the Complaint, they would not suffice to state a claim for de facto merger. Kimberly-Clark's motion will be granted in this respect as well.

As such, the Court will grant both Defendants' motions to dismiss Plaintiff's claims for successor liability against them.

**B. Substantive Claims**

All three Defendants seek dismissal of Plaintiff's claims for fraudulent concealment, negligent misrepresentation, and fraud and deceit. They all offer the same arguments.

**1. Fraudulent Concealment**

Plaintiff's sixth cause of action raises a claim for fraudulent concealment. Plaintiff alleges that

> 57. Defendants falsely and fraudulently represented to the medical and healthcare community, Plaintiff's surgeon, Plaintiffs' surgeon's medical practice, the Plaintiff, and/or the public in general, that said product had been tested and was found to be safe and/or effective for the control of pain after shoulder surgery and that the Painbuster did not pose a high risk of unreasonable, dangerous side effects as alleged herein, and further frequently concealed and intentionally omitted material information, including, but not limited to:
>
> (a) That pain pumps are not as safe as other methods or devices for delievering analgesics;
>
> (b) That the risks of adverse events with pain pumps and bupivacaine products were higher than those with other available analgesics;
>
> (c) That the risks of adverse events with pain pumps and bupivacaine products were not adequately tested and/or known by Defendants; and
>
> (d) That Defendants were aware of the dangers of exposing cartilage to bupivacaine products, in addition to and above and beyond those associated with other available analgesics.
>
> 58. Upon information and belief, the aforementioned statements were made in the State of New York, in approximately 2003, but also before and after, by the Defendants and/or agents, servants and/or employees of the Defendants, to the Plaintiff's surgeon and the Plaintiff's surgeon's medical practice.
>
> 59. The statements were made for the purpose of inducing Plaintiff's surgeon into placing the Painbuster into patients for pain relief following surgery, including into Plaintiff.
>
> 60. When some or all of said representations were made by Defendants, they willfully, wantonly and recklessly disregarded whether the representations were true, and these representations were made by the Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public, in general, and the

> medical and healthcare community in particular, to recommend, dispense and/or purchase said product for use as a delivering device for analgesics, all of which evinced a callous, reckless, willful and depraved indifference to the health, safety and welfare of the Plaintiff.
> 61. Defendants were under a duty to disclose to Plaintiff and/or her physicians, hospitals, and/or healthcare providers the defective nature of the pain pump after shoulder surgery as complained of herein.
> 62. Defendants breached this duty because the representations made by Defendants were, in fact, false, in that the Painbuster was not effective and posed a high risk of unreasonable, dangerous side effects as alleged herein.
> 63. Defendants did intend to and did mislead Plaintiffs [sic] and her physicians, hospitals and health care providers into reliance, and they did reasonably rely upon misrepresentations and continued use of pain pumps after arthroscopic surgery on her shoulder based on the misrepresentations.
> 64. Defendants' misrepresentations induced Plaintiff's healthcare providers to purchase, obtain, recommend and/or dispense and use the Painbuster pump.

Amend. Complt. at ¶¶ 57-64.

Defendants argue that Plaintiff's fraudulent concealment claim must be dismissed because Plaintiff has failed to plead it with the particularity required by Federal Rule of Civil Procedure 9(b). Defendants argue that the Plaintiff fails to identity the allegedly fraudulent statements, when they were made, and to whom they were made with sufficient specificity.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstnaces constituting fraud or mistake." FED. R. CIV. P. 9(b). At the same time, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. To satisfy this rule, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d

1170, 1175 (2d Cir. 1993). "A claim for common law fraud is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)[.]" Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402-3 (2d Cir. 2015).

Plaintiff alleges fraudulent concealment, which requires proof that "defendant made a material misrepresentation of fact; that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; that the plaintiff reasonably relied on the misrepresentation; . . . that the plaintiff suffered damage as a result of its reliance on the defendant's misrepresentation; . . . [and] that the defendant had a duty to disclose material information and that it failed to do so[.]" P.T. Bank Cent. Asia v. ABN AMRO Bank, N.V., 301 A.D.2d 373, 377, 754 N.Y.S.2d 245, 251 (1st Dept. 2003). Defendants do not contend that Plaintiff failed to plead these elements, but instead contend that she has not pled them with the specificity required by Rule 9(b).

The Court dismissed Plaintiff's earlier fraud claims with leave to re-plead, finding that Plaintiff offered only general allegations that Defendants made statements they knew were false about the safety of the device in question, but Plaintiff did not state with any specificity when or where those statements were made, or provide sufficient detail about their contents. Plaintiff has now alleged fraud in more particular detail, but Defendants insist that the pleading is still insufficient, in particular because the Plaintiff fails to identify the speaker of the fraudulent statement or offer any precision about the date on which that speech took place.

The Court must again grant the Defendants' motions to dismiss in this respect because they fail in one important respect: identifying the speaker of the fraudulent statement. Plaintiff's allegations do not identify any particular speaker, but instead

simply point to corporate defendants and their unnamed representatives.[1] Courts in this circuit have been clear that allegations of fraud cannot rely on generalized claims that corporations or their agents made fraudulent statements. See Mills, 12 F.3d at 1175 (dismissing complaint that failed to assign fraudulent statements to particular individuals connected to corporate defendant because "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to defendants.") (internal citation omitted); Greenspan v. Allstate Ins. Co., 937 F.Supp. 288, 291 (S.D.N.Y. 1996) (an allegation of fraud "must link the allegedly fraudulent statement to an individual speaker; attribution to a corporate entity or its representative is insufficient"); Lomaglio Associates Inc. v. LBK Marketing Corp., 876 F.Supp. 41, 44 (S.D.N.Y. 1995) ("Attributing statements to a corporate entity does not suffice to link those statements to any individuals, be they directors or otherwise").[2]

The Court will therefore grant the motions with respect to Plaintiff's fraudulent misrepresentation claims. Because Plaintiff could conceivably allege the specific identity of the speaker, the Court will grant the motions without prejudice. Plaintiff may

---

[1]Plaintiff also suggests that she has sufficiently plead the "who" portion of a fraud claim because she has alleged that the statements were made to her surgeon. Rule 9(b) requires that the Plaintiff identify the speaker, not the hearer.

[2]The Court finds the allegations sufficient to satisfy Rule 9(b) in all other respects. Plaintiff identifies statements concerning the efficacy and safety of the Painbuster device which she contends were fraudulent and explains why they were fraudulent. The question of the date of the offending statements is not as clearly stated and is too general in some respects–Plaintiff states that allegedly fraudulent statements were made in or about 2003, and also before and after. At the same time, however, it is clear from the context of the Complaint that they were made in connection with her shoulder surgery, which points to a specific time and place that Plaintiff heard such statements.

file a second amended complaint if Plaintiff can identify particular speakers of the allegedly fraudulent statements. Rule 9(b) requires a particular form of pleading, and the Court is compelled to enforce the Rule.

**2. Negligent Misrepresentation**

Plaintiff also pleads a claim for negligent misrepresentation. "To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his detriment.'" Anschutz Corp. v. Merril Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012) (quoting Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000)). A plaintiff must demonstrate "'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" Id. (quoting In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 271 (2d Cir. 1989) (internal citations omitted)). The Court has already concluded that claims for negligent misrepresentation must meet the Rule 9(b) standard.

Defendants argue that Plaintiff's pleading fails to satisfy the first element of a negligent misrepresentation claim: the existence of a special relationship that created a particular duty to give correct information. The existence of a "duty to speak with care" depends on the circumstances alleged in the Complaint, which could create "some identifiable source of a special duty of care." Kimmell v. Schaefer, 89 N.Y.2d 257, 263-264, 675 N.E..2d 450, 454 (1996). Liability "requires a closer degree of trust between

the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." Dallas Aero, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003). That duty of care exists "only [for] those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party." Id. (internal quotations omitted). The New York Court of Appeals has found that in considering whether a plaintiff has pled a special relationship, "a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." Kimmell, 89 N.Y.2d at 263-64. The Second Circuit Court of Appeals has concluded that "a 'sparsely pled' special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in *Kimmell*.'" Eternity Global Master Fund Ltd. v. Morgan Guarn. Trust Co., 375 F.3d 168, 188 (2d Cir. 2004) (quoting Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001)).

Here, the Court finds that Plaintiff has emphatically pled that the speaker was aware of the use to which Plaintiff would put the particular information about the safety of the Painbuster. The Court also finds that, assuming that Plaintiff identifies particular speakers as required to state a claim for fraud, Plaintiff could conceivably plead in an emphatic fashion the expertise which that speaker appeared to hold. If that were the case, Plaintiff could also conceivably plead with sufficient detail the special relationship between the parties. At this point, however, Plaintiff has not sufficiently pled the nature

of the speakers' expertise. The Court will therefore grant the motion in this respect as well, without prejudice. If Plaintiff chooses to file a Second Amended Complaint, Plaintiff must properly plead a special relationship as well.

**c. Fraud and Deceit**

Finally, the parties offer the same arguments as to the sufficiency of Plaintiff's claim for fraud and deceit as for the other fraud claims. For the same reasons, the Court will grant the Defendants' motions without prejudice to Plaintiff filing a Second Amended Complaint that clearly identifies the particular speakers.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss, dkt. #s 33-35, are hereby GRANTED. Plaintiff may file a second Amended Complaint consistent with the Court's direction above within 21 days of the date of this Order. Failure to file an amended pleading within the time required will cause the Court to go forward as if the Amended Complaint is the operative pleading in this case, and all fraud and negligent misrepresentation claims will be dismissed with prejudice.

Thomas J. McAvoy
Senior, U.S. District Judge

IT IS SO ORDERED

Dated: October 12, 2016